In the Matter of the Estate of CATHARINE L. WOLFE, Deceased.

*Collateral inheritance tax — jurisdiction of the surrogate to declare a corporation exempt — when executors are not protected in the payment of legacies — personally liable for the tax but not for costs — statutes not retroactive.*

Catharine L. Wolfe, who died April 4, 1887, and whose will was admitted to probate on May 31, 1887, bequeathed certain legacies to Grace Church and to the Metropolitan Museum of Art of New York city. In June, 1887, the executors, who had qualified under the will, petitioned for the appointment of an appraiser to determine the amount of the collateral inheritance tax, payable under chapter 483 of the Laws of 1885, of which application neither the district attorney nor the city comptroller were given notice. The appraiser having made a report in which it was stated, among other things, that these corporations were exempt from the tax, and this report having been confirmed by the surrogate by an order, which reserved the question of the liability of these corporations to taxation until September 15, 1887, a copy of the report and of the order was mailed to the city comptroller, and was also served on him.

On October 29, 1887, the surrogate made a further order, reciting the previous order and the proceedings, on September 15, 1887, and adjudged the legacies to these corporations to be free of tax. No copy of this order was served on the district attorney or upon the city comptroller. The executors thereafter paid over the legacies in full.

The Court of Appeals having decided, in 1889, that a religious society was not exempt from this tax, the district attorney, in October, 1890, began a proceeding to collect the taxes from these corporate legatees under the Wolfe will, and it was finally decided by an order of the surrogate, entered February 29, 1892, that the corporations were liable to the tax.

Upon an appeal from such order:

*Held*, that the decree made in the original proceedings before the surrogate, by which he held the corporations not to be liable to the tax, did not make the question *res adjudicata*.

That the notice to the city comptroller did not affect the question, since the act of 1885 gave the surrogate no jurisdiction to decide that a party was not liable to taxation, except, perhaps, in the single case where the district attorney instituted the proceedings under sections 16 and 17 of the act.

That as the surrogate had no jurisdiction to determine the question, his decree did not protect the executors in their payment.

That legislation, subsequent to February 29, 1892, the date of the entry of the last decree, being chapters 169 and 399 of the Laws of that year, exempting religious societies from the operation of the act of 1885, did not affect the decree which had become perfect before the passage of those acts.

In the decree holding the corporations liable to tax the surrogate also held that the executors were not personally liable for the amount of the tax due upon the legacies, nor for the costs and disbursements of the proceeding.

The district attorney appealed from an order confirming this portion of the decree of February 29, 1892.

*Held*, that the executors were personally liable for the tax, because the surrogate had no jurisdiction to declare the corporations exempt.

That it was otherwise as to the costs and disbursements, which were matters within the discretion of the surrogate.

APPEAL by the Rector, Church Wardens and Vestrymen of Grace Church, in the city of New York, from the order, filed in the office of the surrogate of the county of New York on the 26th day of July, 1892, affirming an order made and entered in said office on February 29, 1892; and also from an order, entered and filed in the office of the said surrogate on the 26th day of July, 1892, denying the motion of the said Rector, Church Wardens and Vestrymen of Grace Church to open and vacate said order, entered on the 29th day of February, 1892, and for leave to file a supplemental answer herein; also an appeal by the Metropolitan Museum of Art, in the city of New York, from an order, entered in the office of the clerk of the Surrogate's Court of the county of New York on July 26, 1892, which affirmed an order, entered in said clerk's office on February 29, 1892.

*S. P. Nash*, for Grace Church, appellant.

*Evarts, Choate & Beaman*, for the Metropolitan Museum of Art, appellant.

*B. F. Dos Passos*, for the district attorney, respondent.

First Department, December Term, 1892.

VAN BRUNT, P. J.:

On the 4th of April, 1887, one Catharine L. Wolfe died in the city of New York leaving a last will and testament, which was duly admitted to probate, and letters testamentary issued thereon on the thirty-first of May of that year. By this will certain legacies were left to the appellants. On the 2d of June, 1887, the executors of said Wolfe petitioned the surrogate for the appointment of an appraiser, in order that the amount of the tax upon the various lega-- cies of the decedent might be ascertained and declared, so far as said petitioners were bound to pay the same. Of this application neither the comptroller nor the district attorney had any notice. On the 23d of June, 1887, said executors filed a supplemental petition stating that the said order of June did not prescribe the notice to be given of such appraisment to the parties interested, and praying that an order be made fixing a reasonable time for such notice to parties interested. Thereupon, on the following day an order was made prescribing notice to several persons, not including the comp- troller or district attorney. Thereafter the appraiser appointed by the surrogate proceeded to appraise the property of the decedent, subject to the tax imposed by chapter 483 of the Laws of 1885, and in August, 1887, made and filed his report in which the sole reference to the two gifts or legacies above set forth is as follows :

Amount to be paid to institutions which are free of tax, viz. :

| | |
|---|---|
| Metropolitan Museum of Art, sixth section | $200,000 00 |
| Rector, Wardens, etc., Grace Church Codicil | 350,000 00 |

On the 27th of August, 1887, an order was made by the surrogate confirming said report in all things, and assessing the taxes upon various legacies and gifts given by said decedent under her said will under the provisions of said act. And it was further ordered that nothing therein contained should be construed as an adjudication as to the liability to taxation of property of said estate, whether thereinbefore mentioned or not, except so far as the same was there- inbefore assessed for such taxation, and that all questions as to the liability to taxation, and the value for that purpose, of property not therein assessed, were reserved for further consideration upon the 15th of September, 1887, at eleven o'clock in the forenoon, which time and place were thereby assigned for a hearing upon the

following question, viz.: Why the property disposed of in the fifth, sixth, twelfth, seventeenth and eighteenth clauses of the will of said Catharine Lorillard Wolfe, and in the codicil to said will, should not be valued and assessed under said act — these clauses including the provisions contained in the will and codicil for the appellants. On the 3d of September, 1887, a copy of the appraiser's report, and of said order of August twenty-seventh, was mailed by the attorneys for the executors to various persons, including the comptroller of the city of New York, and on the sixth of September a copy of said order of August twenty-seventh was served upon the comptroller by an assistant of the surrogate, and on the 29th of October, 1887, the surrogate made an order reciting the previous order of August twenty-seventh, and the hearing upon the questions reserved thereunder on September fifteenth, and thereby adjudged, among other things, that the legacies to the Metropolitan Museum of Art, and the legacy to Grace Church, were each of them exempt from taxation under said act. No copy of this order was served upon the comptroller or the district attorney. After the making and entry of said order or decree of the surrogate dated October 29, 1887, the executors of said decedent, relying upon said decree, and in good faith, paid and delivered to the appellants said gifts and legacies given to them under said will and codicil. On the 19th of March, 1889, the Court of Appeals decided that a religious society like Grace Church was not exempt from the tax in question. In June, 1890, by chapter 553 of the Laws of 1890 an act was passed exempting religious, educational and other societies from the provisions of the collateral inheritance tax acts. Subsequently, in June, 1890, the Court of Appeals decided that, as there was no legislative intention shown in the act of 1890, above referred to, that it should have a retroactive effect, its operation was only prospective. On the 15th of October, 1890, the petition herein was filed by the district attorney, who states that he has been notified in writing of the refusal or neglect of the executors to pay the tax as above mentioned.

The answer of the appellants pleaded the decision of the surrogate upon the final order entered upon the 29th of October, 1887; that more than two years had elapsed since said legacy had been paid, and that the jurisdiction of the surrogate in respect to the same had ceased, and claimed exemption under the law of 1890, above referred to.

The matter was referred by the surrogate to a referee, who reported the facts. Exceptions were filed to the referee's report, which were overruled by the surrogate who adopted the conclusion of the referee, that the appellants were liable to the tax.

An amendment to the act of 1885 was passed on the 19th of March, 1892 (chap. 169), which, after amending section 1 of the original act, also added to that section the following words: "Provided, further, that any property heretofore devised or bequeathed, or which may hereafter be devised or bequeathed to any person who is a bishop, or to any religious corporation, shall be exempted from, and not subject to the provisions of this act." On the 30th of April, 1892, the act of 1885 was remodeled by chapter 399 of that year; section 2 of the last-mentioned act containing a similar exemption of any property heretofore or hereafter devised or bequeathed to any person who is a bishop, or to any religious corporation. By the twenty-fifth section of said last-mentioned act, it is provided that the provisions of this act, so far as they are substantially the same as those of laws existing on April 30, 1892, shall be construed as a continuation of such laws modified or amended according to the language employed in this act, and not as new enactments. A petition was filed upon the part of the appellants for leave to set up this legislation as a further answer to the proceedings, which application was denied, the surrogate holding that the provisions of the act of 1892 did not exempt the appellant from liability to the tax. Orders were thereupon entered in conformity to the decision, and the appeals now before the court were taken therefrom.

There are two questions involved in the consideration of these appeals. The first is whether the proceedings before the surrogate, by which he decided that the appellants were not liable to the tax, made the question *res adjudicata*. The discussion of counsel in respect to this point was largely addressed to the question as to whether the comptroller was bound by the decision of the surrogate without having received notice. It seems to us that in respect of notice, by section 13 of chapter 483 of the Laws of 1885, it is entirely discretionary with the surrogate as to what notice shall be given and to whom; and that such proceedings may be initiated either upon the application of any interested party or upon the

surrogate's own motion. The section provides for the appointment of an appraiser, upon the application of any interested party or upon the motion of the surrogate, whenever occasion shall require, whose duty it shall be forthwith to give notice by mail to such persons as the surrogate may, by order, direct of the time and place he will appraise such property, and at such time and place the appraiser shall appraise the same and make a report, and upon the receipt of the report, the surrogate shall forthwith assess and fix the then cash value, and shall immediately give notice thereof by mail to all parties known to be interested therein, and that any person or persons dissatisfied with said appraisal or assessment may appeal therefrom to the surrogate of the proper county, within sixty days after the making and filing of such assessment. It is clear that in all these proceedings there is no obligation to give notice to any person until after the surrogate has made the assessment, and then notice by mail shall be given to all parties interested therein. And it would seem that it was this portion of the act which it was attempted to comply with by serving the order which the surrogate made upon the coming in of the appraiser's report in this case, upon the comptroller. The comptroller was not a person interested in the estate. His interests were not to be affected by any action which the surrogate might take. It was a question as to the right of the State; and the legislature could provide that the surrogate should go on and assess this tax without any notice to any State official. And that is what the legislature seems to have done, and, therefore, if the surrogate had jurisdiction to determine in the proceeding mentioned the question of exemption, the determination mentioned was binding.

But upon an examination of the act we fail to find any authority upon the part of the surrogate to determine the question that a party is not liable to taxation except, perhaps, in a proceeding initiated by the district attorney. The surrogate has the power, upon the application of an interested party or upon his own motion, to appoint an appraiser for the purpose of assessing the tax. But nothing is said in respect to any power upon the part of the surrogate to adjudicate as to what is liable to tax and what is exempt. It may be claimed that the power to assess implies the power to declare the property exempt; especially in view of the provisions

of section 15 of the act of 1885, which provides that " the Surrogate's Court in the county * * * of which the decedent was a resident at the time of his death, shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of said act." But this provision evidently was not intended to give the surrogate the right in any way that he might see fit to determine all questions in relation to the tax, but simply that in the manner prescribed by the act he should have authority to determine all questions relative to the tax. The scheme of the act preceding this general grant of power related only to appointment of property and did not furnish any machinery for determining the question of exemption.

By the sixteenth and seventeenth sections, however, a method is provided for the determination of this question. Section 17 provides that " whenever the treasurer or comptroller of any county shall have reason to believe that any tax is due and unpaid under this act, after the refusal or neglect of the persons interested in the property liable to said tax to pay the same, he shall notify the district attorney of the proper county in writing of such failure to pay such tax, and the district attorney so notified, if he have probable cause to believe a tax is due and unpaid, shall prosecute the proceeding in the Surrogate's Court in the proper county, as provided in section 16 of this act, for the enforcement and collection of such tax." And section 16 declares that, " if it shall appear to the Surrogate's Court that any tax accruing under this act has not been paid according to law, it shall issue a citation citing the persons interested in the property liable to the tax to appear before the court on a day certain, not more than three months after the date of such citation, and show cause why said tax should not be paid." In this proceeding the question of exemption or non-exemption can be determined. But, until such proceeding is taken, the act does not seem to provide any manner in which the issue of exemption from taxation can be presented for adjudication. It may be said that this imposing the burden upon executors of being called upon to pay legacies, and upon estates of being liable to additional interest, because of non-compliance with the law, although they are absolutely unable to compel a determination of their liability to pay, is unreasonable. But this branch of the legislation is no more incongruous, remarkable and unreasonable than many other provisions of the acts relative to the collateral inherit-

ance tax; they becoming more remarkable the more the question is legislated upon. As, for example, in the act of 1892, it is provided that any property heretofore or hereafter devised or bequeathed to any person who is a bishop, or to any religious society, shall be exempt, whereas a legacy to a child of the testator is made the subject of a tax, it seeming to have been the opinion of the legislature that a bishop or religious corporation have greater claims upon testators than their own children, a piece of legislation the parallel of which it would be difficult to find among legislative enactments.

If the surrogate had no jurisdiction to pass upon the question of exemption, then it is clear that his adjudication was no protection to the parties acting thereunder.

The next question presented is: Has the subsequent legislation relieved the appellants from the payment of the tax in question? The learned surrogate was of the opinion that it had not; and attention is called to the decision of our court of last resort in the *Matter of Miller* (110 N. Y., 216). In that case the surrogate says: "The testatrix died in September, 1886. On the 24th of March, 1887, an order was entered confirming the appraisement, and assessing the tax. The tax was not paid. In August, 1887, the legatee asked that the order should be vacated on the ground that he was an adopted child, and that, by the act passed June 25, 1887 (chap. 713), he was exempted. He contended that the act of 1887 not only made any proceeding for its collection impossible, but that it related back to the passage of the act of 1885, and, in effect, nullified the proceeding which led to the order, and annulled the order itself." The court said, in the case cited, "This construction would, by force of the later statute, render void not only the order in question, which was valid when made, but all other similar proceedings, although regular when taken, and would, as said in *Ely* v. *Holton* (15 N. Y., 595), lead to the grossest absurdities." No legislative intention to that effect is discoverable in the act of 1887. The order was complete and perfect the moment it was made, subject to modification or reversal on appeal, but every step had been taken which depended for its force upon the original act. So far as the order is concerned, and the rights and the liabilities of the parties thereunder, it was a transaction complete and closed before the passage of the amendatory act, and being in that condition, we

properly apply the words quoted in *Butler* v. *Palmer* (1 Hill, 324, 355), "The law itself may be disannulled by the author, but the right acquired by virtue of that law, whilst in force, must still remain." The surrogate then continues : "While it is not necessary to determine, at this time, the effect of this amendment, so far as concerns the estates of decedents dying prior to its passage, wherein proceedings for the assessments of the tax have not been instituted or completed, it is difficult to say how, in view of the decision in the Matter of Miller, the court can hold otherwise than that the act has only a prospective effect." And this view of the learned surrogate, it seems to us, must prevail.

In the case of *Key* v. *Goodwin* (4 Moore & Payne, 341–351), Lord Chief Justice TINDAL laid down the rule as follows : " I take the effect of repealing a statute to be to obliterate it (the statute repealed) as completely from the records of the parliament as if it had never passed, and it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded whilst it was an existing law."

Applying these principles to the case at bar, it would seem that the assessment in question, having been entirely completed, as far as the surrogate was concerned, prior to the enactment of the exemption clauses, the appellants cannot derive any benefit therefrom.

It would seem, therefore, that the decree of the surrogate should be affirmed, with costs.

O'BRIEN, J., concurred.

BARRETT, J. :

I concur. In my judgment the State was not concluded by the order originally made by the surrogate exempting these corporations from the tax. The tax is to be paid "to the comptroller for the use of the State," but that does not authorize this official to bind the State except by the result of an independent proceeding, such as is provided for in section 17 of the act. (Chap. 483 of the Laws of 1885.)

Nor could the surrogate conclude the State by acting upon his own motion or by a decision in proceedings (instituted under section 13 of the act) to fix the value of taxable estates. The "persons interested " in that proceeding are those whose estates were assess-

ible.   Its sole object is to correctly assess and fix the cash value of these estates; that is (to quote the act), " of all estates, annuities and life estates or terms of years growing out of " the main estate of the decedent.   The persons interested in having a fair appraisal are entitled to notice and they alone can appeal to the surrogate from his own action in assessing and fixing the cash value of their estates.

Provision for such appeal is made in favor of any person or persons dissatisfied with the appraisement or assessment, but no provision is made for an appeal by whoever may be dissatisfied with non-appraisement or non-assessment because of supposed exemption — a clear implication that an adjudication, under this section alone, of the question of liability was not contemplated.

Section 15 of the act is, however, invoked in aid of the jurisdiction.   That section does confer upon the surrogate jurisdiction to " hear and determine all questions in relation to the tax arising under the provisions of this act."   But this surely is subject to the ordinary rules which govern all hearings and determinations.   It is not jurisdiction to hear and determine *ex parte* or without notice to the person to be affected by the judgment.   Here the State had no notice.   An order, it is true, was served upon the comptroller, but this order was not one upon which the jurisdiction to hear and determine the question of exemption could properly be exercised. Even if it were such an order however, and even if its service upon the comptroller would have been service upon the State, it was not such an original process or mandate as the law contemplates.   The papers upon which it was founded were not served, and the order, on its face and standing alone, conveyed no clear idea that the question of the liability of these particular corporations was to be considered at the time and place specified.   The comptroller was not directed to show cause against the exemption.   There was simply a statement in the order that the question whether the property disposed of in certain clauses of the will should not be valued and assessed, was reserved for further consideration on a particular day assigned for a hearing.   The indorsement upon the order too was misleading.   It simply informed the comptroller that the paper served was a certified copy of a decree " confirming appraiser's report and fixing tax, etc., in estate of Catharine L. Wolfe, filed herein, August 27, 1887."   There was nothing in this

to call the comptroller's attention to the question reserved. So far, therefore, as the comptroller was concerned, the proceeding was without notice, and, as against the State, the judgment amounted to nothing more than *ex parte* instructions to the executors, which the surrogate was not authorized to give.

Upon the second point, I think, the corporations are concluded by the decretal order of February 29, 1892. The present proceeding was, under section 17, for the enforcement and collection of the tax, and it was ended by this decretal order, which directed payment of a specific sum. The right of the State to the tax thereupon became vested, and this right was not divested by the subsequent passage (in March and April, 1892), of exemption acts. This proceeding was, therefore, completed under existing laws granting no exemption. The vested rights thereby acquired were not affected by the subsequent appeal to the surrogate under section 13.

The appeal authorized by this section is only as to the appraisement or assessment, not as to the right to collect and enforce a fair and proper assessment when made. The surrogate might, upon the appeal taken by these corporations under this section, have reduced the amount directed to be paid, but he could not, after a final order decreeing the non-exemption and directing the enforcement of the tax assessed, treat the main question of liability to taxation as *res nova*. The proceedings were, therefore, complete when the exemption acts of 1892 were passed, and the State then had a judgment for the tax which was not impaired by these acts, even if the amount directed to be paid might have been reduced upon the subsequent appeal.

Decree of surrogate affirmed, with costs.

APPEAL by De Lancey Nicoll, district attorney, from so much of the said order, entered in the office of the clerk of the Surrogate's Court, in the county of New York, on the 26th day of July, 1892, as affirms the order, entered in said clerk's office on February 29, 1892, which provided as follows :

"*Fifth.* That the executors of the decedent are not personally liable to the petitioner or State for the amount of the taxes due upon the interest passing to said respondents, or either of them, nor for the costs or disbursements herein."

*B. F. Dos Passos*, for the district attorney, appellant.

*S. P. Nash* and *H. H. Man*, for the executors, respondents.

VAN BRUNT, P. J.:

The facts involved in this appeal are the same as those in the case decided herewith, in which the question of the liability of Grace Church and the Metropolitan Museum of Art to the tax has been discussed and disposed of, and, therefore, it is not necessary, in this opinion, to repeat what has already been said therein.

In the decree holding the said institutions liable for the tax the learned surrogate also held that the executors of the decedent were not personally liable for the amount of the tax due upon the legacies to said legatees, nor for the costs and disbursements herein. The theory upon which the decision is based was, that the executors had acted in good faith, relying upon the decree of the Surrogate's Court, in paying over the legacies in question without retaining the amount of the tax. But, if the view which we have arrived at upon the appeal relative to the liability of these institutions for the tax is correct, then we do not see how the executors can escape the liability imposed by statute. If the surrogate had no jurisdiction in the proceedings to entertain the question which he did of the exemption of these institutions from the inheritance tax, then it is difficult to see how such decree could be a protection to anybody for anything done in pursuance thereof. If the surrogate had no jurisdiction, he had no power to make a decree which would be of any effect whatever. If the question related merely to a matter of regularity in a proceeding, of which the surrogate had jurisdiction, then, perhaps, the conclusion at which he arrived might have been upheld. But where no jurisdiction of the subject-matter, viz., of the question of exemption of these corporations from the tax, has been obtained by the surrogate, his adjudication upon that subject is absolutely null and void. Therefore, as we have held that the surrogate had no jurisdiction in the proceeding to determine this question of exemption, it necessarily follows that the liabilities of the parties remained precisely the same as though no such proceeding had been instituted. We think, therefore, that this portion of the decree with reference to the personal liability of the executors was wrong and should be reversed.

As to the question of costs and disbursements of the proceedings, that was a matter within the discretion of the surrogate, and he had a right to make the adjudication as to them which he did.

The decree, therefore, should be modified in the respect named and affirmed, as modified, without costs.

Barrett and O'Brien, JJ., concurred.

Decree modified as directed in the opinion and, as modified, affirmed, without costs.